**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Crim. No. 15-35-LPS-4 |
| MATTHEW PACKER, | |
| Defendant. | |

## MEMORANDUM ORDER

At Wilmington this **18th** day of **January, 2017**:

1.        On January 3, 2017, a grand jury charged Defendant, Matthew Packer ("Packer"

or "Defendant"), by superseding indictment, with conspiracy to distribute and possess with intent

to distribute five (5) grams or more of actual methamphetamine as well as a mixture and

substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 846.  (*See* D.I.

255)  A jury trial is set to begin on January 23, 2017.

2.        Also on January 3, 2017, the government filed an Omnibus Motion *In Limine*

(D.I. 248) seeking to admit: (i) statements by Packer's alleged co-conspirators, pursuant to

Federal Rule of Evidence ("FRE") 801(d)(2)(E); (ii) Packer's alleged membership in the

Warlocks Motorcycle Club ("Warlocks"), which the government characterizes as an "outlaw

motorcycle gang;" and (iii) Packer's alleged violent actions or threats of violence toward his

girlfriend, should she appear at trial to testify on Packer's behalf.

3.        On January 12, 2017, Packer filed a written response to the government's motion,

opposing the government's request to admit evidence of his alleged membership in the Warlocks. (D.I. 268)

4.     The Court heard argument on the government's motion, as well as other matters, during a pretrial conference held on January 13, 2017. (*See* Transcript ("Tr.")) At the pretrial conference, the Court granted the portion of the government's motion that seeks to introduce statements of alleged co-conspirators, contingent upon the government proving at trial the existence of a conspiracy (a procedural approach Packer does not oppose), and denied as moot the portion of the motion relating to alleged violence toward Packer's girlfriend, who is not anticipated to be a witness at trial. (*See* Tr. at 39-40) The Court took under advisement the dispute regarding the admissibility of evidence relating to Packer's alleged Warlocks membership.

5.     The government contends that Packer was the "right-hand-man" of alleged drug trafficker Paul Friel ("Friel"). (D.I. 248 at 2) Friel, a co-defendant who is expected to testify as a government witness at trial, allegedly told an undercover officer in June 2013 that Packer was a member of the Warlocks. The undercover officer is expected to testify that on August 8, 2013, he observed Packer performing "counter surveillance" at a bar at which at which the officer was scheduled to meet Friel for a drug transaction. During a drug transaction in October 2013, Friel allegedly told the officer that, in connection with their August 8 transaction, he had had his "bros in the Warlocks" follow the officer. (*See id.* at 3) The government also expects Friel to testify that most of his customers were members of motorcycle gangs or introduced to him through those networks, and that Friel preferred working with motorcycle gang members because he believed they were less likely to be undercover law enforcement or to collaborate with police.

2

6.    Packer contends that he is not a member of the Warlocks and was not affiliated with the Warlocks at any time during the operation of the alleged conspiracy.[1] He argues that the Warlocks-related evidence the government seeks to introduce is not probative of any issue that will be in dispute at trial and, additionally, that the risk of unfair prejudice to him far outweighs any probative value the evidence may have. (*See* D.I. 268)

7.    Pursuant to Federal Rule of Evidence 401, evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and that fact "is of consequence in determining the action." Pursuant to FRE 402 and 403, relevant evidence is admissible unless "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 403 is a rule of admissibility, not exclusion. *See United States v. Universal Rehab. Servs. (PA), Inc.*, 205 F.3d 657, 664-65 (3d Cir. 2000); *United States v. Carter*, 410 F. App'x 549, 552 (3d Cir. 2011) ("We have joined other Circuits in holding that Rule 403 creates a presumption of admissibility. . . . Evidence cannot be excluded under Rule 403 merely because its unfairly prejudicial effect is greater than its probative value. Rather, evidence can be kept out only if its unfairly prejudicial effect

---

[1] As evidence that Packer was at least at some point a member of the Warlocks, the government states that Packer was wearing Warlocks "colors" when he was arrested on unrelated charges in 2007, and that recently-recorded prison telephone conversations between Packer and his girlfriend refer to Packer's leadership position in the Warlocks. (D.I. 248 at 21) The government does not seek to present this evidence at trial. Packer does not suggest that the government lacks a good faith basis to contend that Packer was, at some point, a member of the Warlocks.

'substantially outweigh[s]' its probative value.") (internal quotation marks omitted).[2]

8.     The government contends that Packer's alleged membership in the Warlocks is "highly probative of two critical issues at trial: (1) whether the defendant was a trusted participant in a drug trafficking conspiracy that was composed primarily of current and former members of outlaw motorcycle gangs ('OMGs'); and (2) whether the defendant, at the direction of co-conspirator Paul Friel, performed counter-surveillance of an undercover officer." (D.I. 269 at 1) The Court agrees with the government. The evidence the government anticipates presenting at trial will tend to show that Packer was the only member or former member of the Warlocks involved, that Friel trusted members of motorcycle gangs as co-conspirators and customers because he thought they were unlikely to be undercover officers or turn him in to law enforcement, and Friel specifically trusted Packer with the counter-surveillance task (which he hoped would be intimidating to the undercover officer) because he thought of Warlocks as trustworthy and intimidating people. This evidence is probative of the existence of a drug conspiracy and Packer's participation in it, both of which are essential elements of the government's case. *See United States v. Sloan*, 65 F.3d 149, 151 (10th Cir. 1995) ("Gang membership helped to establish an agreement among the subjects, the purpose of the conspiracy

---

[2]The Government contends – and Packer does not dispute (*see* Tr. at 29) – that Rules 401 and 403, rather than Rule 404(b), provide the proper framework for analyzing its motion. The government does not seek to introduce evidence of other crimes, wrongs, or acts, just of Packer's alleged membership in the Warlocks. That alleged membership, then, is intrinsic, as it purportedly "directly proves" the charged offense. *See United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010). In any event, the government satisfies Rule 404(b) – which is "inclusionary" in nature, *id.* at 244 – because the government is not seeking to use Packer's alleged gang membership as evidence of his character or propensity to commit criminal offenses, but rather for the proper purposes of supplying helpful background information (putting other witnesses' testimony in context) and showing Packer had opportunity to commit the crimes charged.

4

and knowledge on the part of these defendants.") (internal quotation marks omitted).

9.     On the other side of the scale, there is a risk of unfair prejudice to Packer once the jury hears evidence of his alleged membership in the Warlocks. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997) ("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged."). It is possible that jurors will know the Warlocks are an "outlaw" motorcycle gang – even though they will only be referred to as a "motorcycle gang"[3] – and believe that they commit crimes and, further, that Packer is therefore more likely to have committed a crime, potentially including the one for which he is charged. But this risk is not so great as to substantially outweigh the probative value of the limited evidence the government requests to introduce. The government's evidence puts Packer in a difficult situation in front of the jury because he evidently ended any affiliation with the Warlocks years before the alleged conspiracy, but the severing of such ties is not easy to prove, and Packer may be unfairly prejudiced to the extent he feels it necessary as part of his defense to disprove any suggestion or belief that he remained in the Warlocks at the time of the crimes charged. Again, however, this risk of unfair prejudice does not substantially outweigh the probative value of the government's evidence. In sum, Rule 403 does not support denying the government's request.

10.     Reducing the risk of unfair prejudice here is the fact that the government seeks to introduce only a small amount of evidence. Its evidentiary references to the Warlocks would

---

[3]The government will refer to the Warlocks and Pagans as "motorcycle gangs" and not as "outlaw motorcycle gangs." (*See* Tr. at 11)

consist essentially of: (i) Friel's testimony that he had his "bros in the Warlocks," i.e., Packer, conduct counter surveillance on the undercover officer in connection with the August 2013 drug transaction, in order to be intimidating; (ii) Friel's and other witnesses' statements that they believed Packer was a member of the Warlocks; (iii) evidence that a majority of Friel's customer base were members of motorcycle gangs; and (iv) evidence of Friel's belief that motorcycle gang members were trustworthy because they were unlikely to be cooperating with the government. (*See generally* D.I. 248 at 26 (government representing that "this evidence will neither be 'the entire theme of the trial' nor 'a substantial theme of' Friel's testimony" (internal quotation marks omitted))) The government does not seek to introduce any evidence of any crimes or other bad acts allegedly undertaken by the Warlocks or any other outlaw motorcycle gang. Further reducing the risk of unfair prejudice is the fact that the Court will (if Defendant wishes) provide a proper limiting instruction to the jury.

11.     Finally, even were the risk of unfair prejudice greater than it is here, the Court would still be inclined to grant the government's motion because this case is likely to turn on the jury's assessment of the credibility of alleged co-conspirators. It appears from defense counsel's representations that much of the trial (at which Defendant, counsel states, is more likely than not to testify) will involve undisputed testimony about certain conduct accompanied by vigorous disputes as to the intent and meaning of that conduct. The evidence regarding Packer's participation in the August 2013 purported counter surveillance is a prime example: the record will likely show, without dispute, that Packer was at the bar that night and that he took the actions the undercover officer (and others) will testify were observed, but witnesses will disagree as to whether those actions were counter surveillance or some other (innocent) conduct. To the

extent the trial will involve the need to assess the witnesses' credibility, it is far preferable to allow the jury to hear the witnesses' testimony in their own words, as they actually stated or heard it, rather than potentially interfere with their ability to tell the truth by recrafting their testimony (e.g., to omit references to the Warlocks). *See generally United States v. McGill*, 815 F.3d 846, 879 (D.C. Cir. 2016) ("In conspiracy prosecutions, the prosecution is usually allowed considerable leeway in offering evidence of other offenses to inform the jury of the background of the conspiracy charged . . . and to help explain to the jury how the illegal relationship between the participants in the crime developed.") (internal quotation marks omitted).

Accordingly, the government's motion (D.I. 248) is GRANTED with respect to evidence relating to Packer's alleged membership in the Warlocks and DENIED AS MOOT with respect to evidence of violent actions.

Further, the parties shall, no later than January 20, 2017, submit a proposed limiting instruction, consistent with this Memorandum Order, and their proposal(s) as to when the Court should give such an instruction.

_____
HON. LEONARD P. STARK
UNITED STATES DISTRICT COURT

7